We're going to go on to Case No. 18-2945, which is Barrington Music Products v. Music & Arts Center. Good morning. May it please the Court? Yeah. Still morning. At the trial of this trademark infringement case, the evidence proved one and only one number for the defendant Guitar Center's gross revenues derived from infringing sales. That number was $4.9 million. The number came from the testimony of a gentleman named Steve Zaff, who was Guitar Center's 30B6 witness during discovery and then testified as an officer of Guitar Center Stores, Incorporated, during the trial. His testimony was that Guitar Center Stores' gross revenues from infringing sales was $4.9 million. This evidence was undisputed. There was no testimony or evidence about another number for Guitar Center's gross revenues from infringing sales. Now, why did Barrington agree to a verdict form and instructions that treated Guitar Center Stores, Inc. and Music & Arts Centers as separate legal entities? That seems to be the origin of the problems here. The verdict form itself, Your Honor, doesn't identify them as separate legal entities, and the verdict form listing the different divisions or subsidiaries of Guitar Center Stores can't change the undisputed evidence about proving Guitar Center Stores' gross revenues. related to the corporate ownership of Music & Arts? If not, why not? First of all, the verdict form itself does not state that Music & Arts is a separate corporate entity capable of acting independently from the division in which it sits. The evidence proved, testimony from Steve Zaff, that Music & Arts Centers was just an unincorporated division of Guitar Centers, Inc. Nothing on the verdict form can change that. Did you agree to a form of verdict and jury instructions that directed the jury to treat each defendant separately? No, Your Honor. The jury instruction does use the singular, though, doesn't it? When we move down, I think it's the proposed Instruction 14. Maybe I got that number wrong, but the idea being, at some point, when we're talking about allocating damages, we're talking about a singular defendant, correct? That's fair, Your Honor. In the way it was addressed on behalf of our client, Barrington, the jury verdict form was decided on and provided to the jury, but the undisputed evidence was that there was only one number for Guitar Centers' gross revenues from infringing sales. When we argued that point to the jury, we penciled in only one number and argued that the jury should only award damages or find gross revenues from that one number, $4.9 million, taken directly from Steve Zaff's testimony. There was no other evidence to support filling in any of those other numbers. Here's my problem, and I could really be way out wrong. I don't know. It appeared to me that no evidence was presented that would lead the jury to conclude that it should hold Music and Arts liable for the acts of Guitar Center stores. Nor was there any request for instructions that would have directed the jury to treat those two defendants as the same entity. It seemed to me that what you agreed to was a verdict that may have confused the jury. In other words, in the absence of evidence regarding the corporate structure of defendant Guitar Center, the jury seems to have concluded that Music and Arts Center was a separate defendant and found that Guitar Center infringed, but Music and Arts did not. The jury was presented with damages chart that separated the damages out for each defendant. Most of the damages were attributed to Music and Arts, but the jury found that Music and Arts didn't infringe the trademark, and that meant that Guitar Center was not held liable for the bulk of the infringement. Now, help me out. Where am I completely wrong? Thanks, Your Honor. So you're referring to exhibit number 32, which both the appellees and the district court speculated was the source of the $3,228 that the jury eventually landed on. There was only one witness who testified about that document, and the only testimony that witness gave, and this, again, Steve Zaff, is that the bottom line number listed on that document, $4.9 million, was Guitar Center's gross revenues from infringing sales. So in executing their job as the jury in finding gross revenues derived from infringing sales, the jury should have followed the undisputed evidence and written in $4.9 million. There was no other numbers there, and there was no testimony about this $3,228 number. It was never presented to the jury to explain what it meant. Okay, here. What evidence, let's try it this way, what evidence was presented to the jury that would have alerted the jury that Music and Arts was simply another name for Guitar Center stores? Where in the record would we find documentary evidence or testimony regarding the corporate structure of the defendants? There was ample evidence on that, Your Honor, and I'll refer the court to our reply brief where we identify the testimony of Steve Zaff. The record site to that is from the trial transcript, which was at ECF document number 125 at page 558, where Steve Zaff testified himself that, quote, These sites, Your Honor, on page two of our reply brief, it's at 587588, same transcript from May 21st. Mr. Zaff explains that Music and Arts is just a division of Guitar Center. Well, now here's the thing. Okay, okay. We lawyers, okay, everyone in this courtroom, might understand the legal significance of the word division. But how is a jury to know that Guitar Center should be held liable for the acts of its division, Music and Arts? To me, it seems like the sort of thing that should have been cleared up before trial or in the instructions. Or by the district court judge in ruling on the Rule 59 motion that we filed, Your Honor. Assuming you're correct that the jury was just simply confused and didn't grab onto the undisputed evidence about the Music and Arts Center being a division, we provided the district court with an opportunity to correct that manifest error of law, in fact, in our Rule 59 motion, where we presented the district court with this evidence. And it appears from the language in the district court's ruling that either the district court disregarded or didn't follow the laws that we discuss in our brief, the Copperwell case, the United States Supreme Court opinion that says that a division of a corporation can't act independently. It's not a separate legal entity. There's only one corporate actor. Either the district court judge didn't apply that law or the district court judge himself was confused about the relationship between Music and Arts Center and Guitar Centers Incorporated, despite the evidence that was pretty clear on that point. The district court judge, and the reason I say that is in the district court's opinion, which is included in our appendix, Judge Miller refers to Music and Arts as a subsidiary that is owned by Guitar Centers Incorporated. That was an error. And that manifest error of law, in fact, justifies a remand for a new trial on damages. Okay, thank you very much. Okay. Hi, Mr. Applegate. Good morning, Your Honor. May it please the court. My name is Dan Applegate. I'm an attorney from May Oberfeld Lorber in Mishawaka, Indiana. I represent the appellees. Your Honors, first I would like to address counsel's argument that the number of $4.9 million is undisputed. That is not accurate. If you look at the appellant's initial brief, which is document 12, it recounts Mr. Steve Zaps, the president of Music Arts. It recounts his testimony. And Mr. Zaps testifies that the gross revenue of Guitar Center was $4.9 million. And I'm sorry, this is page 9 of document 12. Mr. Zaps testifies that the gross revenue of Guitar Center was $4.9 million. And then he was asked, what is that based on? And he said it's based on Exhibit 19. Exhibit 19 is Deposition Exhibit 19 is Trial Exhibit 32. Trial Exhibit 32 gives a combined gross revenue of $4.9 million for Music and Arts, Woodwind and Brass and Guitar Center. But then it also breaks that revenue down into separate components for each individual named defendant. And the amount specified for Guitar Center, the only defendant found liable, was $3,228. Excuse me. The exact amount awarded by the jury. Did the defense during its closing argument argue it's only $3,228? No, Your Honor. The defense did not argue that. However, Mr. Zaps did testify. The jury saw his video deposition and the jury saw Mr. Zaps testify that the total number for the three defendants was $4.9 million. And he was asked, what is that based on? And he said Exhibit 32, which is the exhibit that is referenced throughout all of the briefs in this case. Secondly, Your Honors, I'd like to address the issue of whether Music and Arts Centers and Guitar Centers is the same legal entity and what is the connection between those two entities. I'm sorry, Your Honor. There's more than two entities. Correct, Your Honor. The question here is, correct. What is the connection between Music and Arts and Guitar Center? And whether Music and Arts and Guitar Center are the same legal entity does not change what the jury was asked to do in this case, and it does not undermine the jury's opinion. Even if Guitar Center were the only named defendant and Music and Arts were treated as a division, it's still completely possible that the jury could have determined that the sales of the Guitar Center brand or division were infringing and the sales of the Music and Arts Center brand or division were not infringing. Additionally, the jury was instructed to look at the damages caused by each liable defendant, not each liable entity. So taking a look then at why the jury's verdict makes sense, why would it make sense for them to look at Guitar Center and Music and Arts Centers separately and separate those two sales into one infringing and one non-infringing? So first of all, Barrington elected to sue four separate defendants. It claims in its, I believe, in its reply brief that it initially thought that Music and Arts Center was a separate individual company and then later learned that it was just a division of Guitar Center. Well, regardless of whether that's true, the fact remains that Barrington never sought to remove Music and Arts Center as a party defendant. It never sought to clarify the pleadings or indicate that it was an assumed business name or a DBA name. Rather, Barrington continued to pursue these two defendants, two of the four defendants, as separate defendants throughout the case during the discovery and all pre-trial submissions. That's how they presented them to the jury and that's how the verdict form was presented and that's how the jury instructions were presented. What's your response, Mr. Applegate, to this idea that the appellant's argument is we're putting form over substance? The jury was too smart by half by identifying this line item on Exhibit 32 that says Guitar Center. Appellants argue, well, throughout we talked about Guitar Center, we're talking about the entire entity, it's almost $5 million. That's what the jury really meant. What is your response to that? My response to that is that that is not, that's just contrary to what occurred in this case. What happened was the Music and Arts Centers were presented as two separate and distinct entities. They were, Steve Zaff in his deposition, the jury heard Mr. Zaff testify that Guitar Center is a collection of five acquisitions. He testified that Music and Arts Centers is a very, very different company than its parents' company. Music and Arts, the jury heard that Music and Arts Centers is a company located in Frederick, Maryland. It's dedicated to serving band and orchestra and music education customers. Guitar Center, on the other hand, is on the other side of the country, located in Los Angeles, California. It's dedicated towards serving the rock and roll type musicians and that type of audience. Mr. Zaff also testified that the two companies, although acquisitions of Guitar Center, have been kept almost entirely separate to retain their own distinct brand and culture. At the conclusion of the trial, the jury instructions referred to determining the liability of each defendant and calculating the damages attributable to each liable defendant. As you mentioned, Your Honor, the jury was provided a verdict form that listed Guitar Center and Music and Arts Centers separately and then left lines for the jury to fill in what was their profit and what was their deductible expenses. There was no testimony or other evidence presented at trial that explained the effect of the corporate legal relationship between Music and Arts Centers and Guitar Centers. Although Music and Arts Centers may have been referred to as a division, it's also true that Music and Arts Centers was presented as a separate defendant capable of making its own infringing sales or non-infringing sales, in this case, throughout the trial. To quote Judge Miller's order, which is right on point, no reasonable jury could think, after hearing all of this evidence, that after finding Music and Arts and Woodwind and Brass were not liable, that it was to award the profits of those defendants to the separately named Guitar Center. Which party suggested the form of the verdict? Your Honor, the verdict form was created by the court. The court had a plaintiff verdict form and a defendant's verdict form. How did they differ? The defendant's verdict form, if the jury ruled in favor of the defendant, it was just that we rule in favor of the defendant. Period. Period. For the plaintiff's verdict form, it had the four entities listed, and then it had a space for them to indicate the amounts of their profits that the jury calculated were infringing sales. Plaintiff's counsel actually had objected to the jury form and asked that the court add a separate column so that the jury form would have four lines for the profits and four lines for the deductible expenses. So plaintiff was given an opportunity to object to the jury form. They objected on a totally unrelated, separate basis. The court granted that, as you can see in Appellant's brief where the jury form is reproduced. The court granted that and left another column for the deductible expenses. Your Honors, again, just to quote Judge Miller's order, he concluded that this jury did exactly what it was supposed to do under the instructions in the verdict form. Decide who violated the trademark and award Barrington that defendant's total sales. The jury's verdict was impeccable. The decision of the district court should be affirmed. Your Honors, that's all I have if you don't have any other questions. Thank you. Thank you. Thanks, Your Honor. I'll just address the one point about the idea that even if Music and Arts Center is not a separate incorporated entity, the evidence showed that it acted independently. The idea there is that somehow a corporation can afford an unincorporated division such a degree of independence that it can be treated as a separate corporate actor, and certainly that is not the law. The degree of independence that a corporation chooses to afford to its unincorporated divisions doesn't create a separate legal entity. The division would have to incorporate to do that, and in treating Music and Arts Center as an entity that could act separately from Guitar Center Stores Incorporated, the district court erred in a manner that justifies remand for a new trial on damages. Thank you. Thank you very much. Thank you to one and all, and the case will be taken under advisement. Thank you very much.